UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH ALOTTA,

Plaintiff,                    Civil Action No. 19-10919
                              Honorable Terrence G. Berg
v.                            Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 13]

Plaintiff Elizabeth Alotta ("Alotta") brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #12, #13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge ("ALJ") erred in failing to consider Alotta's mental impairment when evaluating her residual functional capacity ("RFC"). As such, the ALJ's conclusion that Alotta is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be

**DENIED**, Alotta's Motion for Summary Judgment **(Doc. #12)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

## II.    REPORT

### A.    Background

Alotta was 50 years old at the time of her alleged onset date of September 21, 2015, and at 5'6" tall weighed approximately 165 pounds during the relevant time period. (Tr. 177, 180). She completed high school and three years of college. (Tr. 181). She worked as a paraprofessional with special needs students for nineteen years, but stopped working in September 2015, after she suffered a back/neck injury when "one of the kids [] started to charge towards the water buckets" and she tried to stop him. (Tr. 180, 181, 192, 231, 314). She now alleges disability as a result of back and neck pain, carpal tunnel syndrome, depression, and chronic headaches which cause her to have problems with concentration. (Tr. 180, 207).

After Alotta's application for DIB was denied at the initial level on May 17, 2017 (Tr. 82-85), she timely requested an administrative hearing, which was held on May 9, 2018, before ALJ Lauren Burstein (Tr. 35-68). Alotta, who was represented by attorney Donald Shiffman, testified at the hearing, as did vocational expert Don Harrison. (*Id.*). On September 21, 2018, the ALJ issued a written decision finding that Alotta is not disabled under the Act. (Tr. 22-30). On February 22, 2019, the Appeals Council denied review.

(Tr. 1-6). Alotta timely filed for judicial review of the final decision on March 28, 2019. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Alotta's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work

experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Alotta is not disabled under the Act.  At Step One, the ALJ found that Alotta has not engaged in substantial gainful activity since September 21, 2015 (the alleged onset date).  (Tr. 24).  At Step Two, the ALJ found that she has the severe impairments of degenerative disc disease of the cervical spine and sacroiliitis.  (*Id.*).  At Step Three, the ALJ found that Alotta's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 25).

The ALJ then assessed Alotta's RFC, concluding that she is capable of performing light work, with the following limitations: can occasionally balance, stoop, kneel, crouch, and climb ramps or stairs; can never crawl or climb ladders, ropes, or scaffolds; and requires a sit/stand option, alternating at 20-minute intervals.  (Tr. 26).

4

At Step Four, the ALJ found that Alotta is capable of performing her past relevant work as a paraprofessional. (Tr. 28). At Step Five, the ALJ made alternative findings, determining, based in part on testimony provided by the vocational expert ("VE") in response to hypothetical questions, that Alotta also is capable of performing the jobs of office helper (50,000 jobs nationally), light fixture inspector (35,000 jobs), and laundry sorter (30,000 jobs). (Tr. 28-29). As a result, the ALJ concluded that Alotta is not disabled under the Act. (Tr. 30).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at

5

512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.    Analysis

As set forth above, the ALJ found that Alotta has the severe impairments of degenerative disc disease of the cervical spine and sacroiliitis.  (Tr. 24).  However, she also found at Step Two that Alotta's depression, while a medically determinable impairment, does not cause more than a minimal limitation on her ability to perform basic mental work activities and, thus, is non-severe within the meaning of the Act.  (Tr. 24-25).  Alotta now challenges the ALJ's evaluation of her depression, as well as the ALJ's failure to consider the effects of this impairment in formulating her RFC.[1]  (Doc. #12 at 12-18).

---

[1] Because Alotta's arguments pertain only to the ALJ's evaluation of her mental impairment, the Court will focus its discussion on evidence pertaining to this condition.

At Step Two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4). "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act ...." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007). The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities ...." 20 C.F.R. § 404.1520(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.* The Sixth Circuit has "characterized step two of the disability determination process as a '*de minimis* hurdle.'" *Despins*, 257 F. App'x at 929.

In assessing the severity of Alotta's depression, the ALJ noted that, while Alotta testified that she was taking medication for depression, there is no evidence in the record that she underwent any counseling or therapy for this condition. (Tr. 24). The ALJ also noted that, during visits to her primary care physician for physical complaints, Alotta often presented with normal psychiatric examination findings. (*Id.* (citing Tr. 255, 257, 259, 262, 265, 268, 271, 274)).

7

In her Step Two analysis, the ALJ also considered the April 7, 2017 opinion of the consultative psychological examiner, Hugh Bray, Ph.D. (Tr. 25). Dr. Bray noted that Alotta had been diagnosed with depression by her primary care physician. (Tr. 358). At the consultative examination, Alotta reported having difficulty even brushing her teeth in the morning; suffering from pain and stress; and feeling frustrated, crying easily, and having trouble focusing. (*Id.*). She further indicated that her depression had "significantly increased" following her September 2015 work injury. (*Id.*). At the time of Dr. Bray's examination, Alotta was not in therapy or taking mental health medications because she had no insurance. (Tr. 359). She indicated that she could perform her activities of daily living, but did so slowly (and not always, due to both physical issues and depression). (Tr. 360). Dr. Bray observed that Alotta's motor activity was slowed; her self-esteem was diminished; she had feelings of worthlessness; and, although she was "pleasant," she also was "tearing up, and crying" during the evaluation, with a depressed mood. (Tr. 360-61). Dr. Bray diagnosed Alotta with major depressive disorder and anxiety disorder; characterized her prognosis as "fair"; and opined that she "needs to be in mental health treatment" and "needs to be on prescribed psychotropic medications." (Tr. 362).

Dr. Bray then evaluated the four broad work-related areas of mental functioning, opining that Alotta is mildly impaired in the ability to relate to others; moderately impaired in the ability to maintain concentration, persistence, or pace; and "moderately to significantly" impaired in the ability to withstand stress and pressure associated with day-to-day work activities. (*Id.*). Additionally, Dr. Bray opined that Alotta's mental ability to understand, remember and carry out tasks is moderately impaired, observing:

> In interacting with the examiner today, the client was able to perform simple repetitive tasks. It is likely the claimant could handle more complex tasks. Difficulty in performing multiple step tasks is likely to be moderate. The claimant can do simple repetitive tasks.

(*Id.*). The ALJ specifically considered Dr. Bray's opinion but afforded it "little weight," finding that "the restrictions are inconsistent with the medical record, including the normal psychiatric exam findings exhibited by the claimant throughout treatment." (Tr. 25).

The ALJ also considered the opinion of the state agency psychological consultant, Colin King, Ph.D., who reviewed Alotta's medical records and concluded that her depressive, bipolar, and related disorders were non-severe. (Tr. 25, 75). In reaching this conclusion, Dr. King stated:

> Careful consideration has been given to [Alotta's] statements regarding the alleged symptoms and their effects on functioning. [She] reports a [history] of depression and a subsequent injury in school in 2015. She was taken off work based on medical reasons. [Alotta] continues to report depression and inability to cope. [S]he is not in any active mental health treatment. She attended a [consultative examination] on 4-7-17 and reported severe symptoms of depression. She also reported taking walks, watching tv, gardening, attending church, playing video games, driving, and keeping appointments. Her allegations of severe depression are not fully credible. Mental status is intact as evidenced by being oriented times three, being able to make rational decisions and not being a danger to self or others. [Alotta's] symptoms appear to be non-severe[.]

(Tr. 75). The ALJ afforded greater weight to the opinion of Dr. King than Dr. Bray, finding Dr. King's opinion "consistent with the medical record, including the lack of any significant mental health treatment in the record." (Tr. 25).

In her motion, Alotta argues that the ALJ's Step Two finding – that her depression is non-severe – is not supported by substantial evidence. Although Alotta's Step Two

9

argument, as presented, is fairly weak,[2] ultimately, the Court need not resolve this issue. This is because, even assuming the ALJ's Step Two finding is supported by substantial evidence, and Alotta's depression is in fact non-severe, the ALJ nevertheless erred in failing to consider the effects of this impairment on her RFC.

An individual's RFC is a medical assessment of what she can do in a work setting in spite of functional limitations and environmental restrictions imposed by *all* of her medically determinable impairments, including those that are non-severe.  *See* 20 C.F.R. § 404.1545.  As the Sixth Circuit has recognized, in determining an individual's RFC, "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe."  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1523(c) ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity … we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

---

[2] Alotta's principal argument, that Dr. Bray's opinion was entitled to greater weight simply because he saw Alotta in person, whereas Dr. King based his opinion on an evaluation of the medical records, is contrary to established law.  *See Furman v. Comm'r of Soc. Sec.*, No. 17-12857, 2018 WL 4214157, at *5 (E.D. Mich. Aug. 15, 2018) (ALJ did not err in affording more weight to the opinion of the state agency physician, who reviewed the plaintiff's medical records, than to the consultative examiner, who examined the plaintiff once) (citing *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight [that those of treating or examining physicians] if their opinions are supported by the evidence.")).  Relatedly, Alotta failed to address the main reasons articulated by the ALJ for finding her depression to be non-severe – a lack of evidence that she "underwent counseling or therapy for mental health complaints," and the fact that when she sought treatment for physical impairments, she typically "presented with normal psychiatric exam findings."  (Tr. 24).  Briefing flaws like these are generally not a successful recipe for appealing an ALJ's decision.

If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process."); 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). Moreover, Social Security Ruling 96-8p provides that:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Social Security Ruling 96-8p*, 1996 WL 374184, at \*5 (July 2, 1996). The law is clear, then, that once the ALJ determined that Alotta suffers from severe physical impairments – here, degenerative disc disease of the cervical spine and sacroiliitis – she was required to consider these severe impairments *in combination with all non-severe impairments*, including Alotta's depression, in assessing her RFC. *See White*, 312 F. App'x at 787; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190-91 (6th Cir. 2009) (once the ALJ determined that the claimant suffered from severe physical impairments, he also was required to consider her non-severe mental impairments in assessing her RFC).

In this case, it is at best unclear whether the ALJ considered the effect of Alotta's

mental impairment in formulating her RFC.  Indeed, a fair reading of the ALJ's decision suggests she did not.  In discussing Alotta's depression at Step Two, the ALJ did not find that Alotta had no limitations as a result of her mental impairment.  Rather, the ALJ specifically found that, as a result of her depression, Alotta experiences mild limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself.[3]  (Tr. 25).  After making these findings, however, the ALJ made no further mention of any limitations resulting from Alotta's mental impairment.  The ALJ's RFC analysis does not mention Alotta's depression, and instead addresses only her back and neck impairments.  (Tr. 26-27).  For these reasons, the ALJ's decision leaves the reader with the impression that she failed to consider Alotta's non-severe mental impairment in formulating her RFC, which is problematic.  *See, e.g., Katona v. Comm'r of Soc. Sec.*, No. 14-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) ("to the extent an ALJ determines that an identified impairment, severe or *non-severe*, does not result in any work-related restrictions or limitations, the ALJ is required to state the basis for such conclusion") (emphasis in original) (internal quotations omitted); *Biehl v. Comm'r of Soc. Sec.*, No. 14-10293, 2015 WL 736366, at *21 (E.D. Mich. Feb. 20, 2015) (remanding where the ALJ's RFC assessment was silent as to the plaintiff's mental limitations and, thus, it was "at best,

---

[3] In her Step Two analysis, the ALJ specifically noted that these limitations "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires ***a more detailed assessment***" of the impairment and its limitations (Tr. 25) (emphasis added).  As set forth below, however, the ALJ's decision does not contain any such assessment, let alone a "more detailed" one.

12

unclear whether the ALJ considered the effect of plaintiff's depression when formulating her RFC").

Perhaps recognizing this error in the ALJ's analysis, the Commissioner asserts, "Turning to the RFC assessment, the ALJ appropriately adopted Dr. King's opinion, which did not include any functional limitations caused by her depression." (Doc. #13 at 14 (citing Tr. 26, 75)). The problem with this assertion, however, is that the ALJ did not mention Dr. King's opinion in the RFC analysis, let alone indicate that she was relying on that opinion to find that Alotta has *no* functional limitations related to her depression. (Tr. 26-27). And, again, in the only portion of the written decision in which the ALJ did discuss Dr. King's opinion – namely, at Step Two – she specifically found that Alotta's depression causes her to suffer mild limitations in each of the four broad areas of mental functioning. (Tr. 25). Thus, while the ALJ certainly could have considered Dr. King's opinion in formulating Alotta's RFC, and could have relied on this opinion to conclude that her depression does not functionally limit her ability to perform basic work-related activities, the Court simply cannot say from a review of the decision that this was done.

The Commissioner also argues that any error in the ALJ's RFC analysis is harmless because to the extent Alotta relies on Dr. Bray's opinion in asserting that certain mental limitations should have been included in the RFC, the only limitation he identified – to simple, repetitive tasks – would not change the ALJ's decision. (Doc. #13 at 15-16). But this improperly asks the Court to play the role of the ALJ and evaluate the medical records and other evidence in the first instance in terms of how it all might translate into functional limitations. It also ignores that functional limitations determined by the ALJ need not be

tracked to any particular medical opinion, and instead must be based on the ALJ's overall analysis of the medical and non-medical evidence in the record. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). Finally, the Court notes that in addition to restricting Alotta to simple, repetitive tasks, Dr. Bray also found that Alotta was moderately impaired in the ability to understand, remember and carry out tasks; moderately impaired in the ability to maintain concentration, persistence, or pace; and "moderately to significantly" impaired in the ability to withstand stress and pressure associated with day-to-day work activities. (Tr. 362). Had the ALJ considered Dr. Bray's opinion (even with the "little weight" she assigned to it) against the other evidence in the record[4] *in determining the functional impact* of Alotta's non-severe mental impairment, she could have concluded that additional restrictions – above and beyond a limitation to simple, repetitive tasks – were necessary to account for these impairments.

Thus, while the limited number of medical records regarding Alotta's mental impairment may mean she is unlikely to achieve a different result on remand,[5] because the

---

[4] This would include consideration of Alotta's testimony, function reports, medical records, and the reasons why she might not have sought more formal mental health treatment. For example, in weighing the opinions of Dr. King and Dr. Bray, the ALJ specifically noted "the lack of any significant mental health treatment in the record." (Tr. 25). But, treatment records from Alotta's providers indicate that, throughout at least 2015 and 2016, her treating physician, Praveen Modi, M.D., was prescribing Zoloft and/or Xanax for anxiety, and other providers noted anxiety and depression on multiple occasions. (*E.g.*, Tr. 254, 256, 290, 322, 328, 353). Moreover, Alotta testified at the administrative hearing that she was not treating with a mental health provider as a result of "insurance" issues, a fact that Dr. Bray also noted at the consultative examination. (Tr. 60, 359). There is no indication in the written decision that the ALJ considered such "possible reasons" for Alotta's failure to seek formal mental health treatment, as she was required to do. *Soc. Sec. Rul. 16-3p*, 2016 WL 1119029, at *8 (Mar. 16, 2016).

[5] The Court agrees with the Commissioner that Alotta failed to clearly identify a specific additional mental RFC limitation that she believes the ALJ should have imposed. (ECF No. 13, PageID.540.). However, she noted that, in terms of her RFC determination, "the ALJ did not

Court cannot say that the ALJ's error was necessarily harmless, remand is required so that the ALJ may properly consider the effects of all of Alotta's impairments – severe and non-severe – on her RFC.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #13)** be **DENIED**, Alotta's Motion for Summary Judgment **(Doc. #12)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: November 15, 2019                     s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d)(1). Failure to timely file objections constitutes a waiver of any

---

evaluate [her] abilities to sustain work or evaluate her ability to complete tasks within an acceptable time period," as is required by 20 C.F.R. § 404.1520a. (ECF No. 12, PageID.523.) Coupled with Alotta's references to Dr. Bray's findings – to which the ALJ gave "limited" weight – regarding her ability to maintain concentration, persistence, and pace, and to withstand the stress of day-to-day work activities – she has done enough, albeit barely, to preserve the issue for consideration by this Court. (*Id.*, PageID.524.)

further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).   Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 15, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager